IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | No. 18 CV 242<br>Hon. Manish S. Shah |
| Plaintiff, | |
| v. | |
| RICHARD D. CARTER; MARK R. SLOBODNIK; and BLUE GURU TRADING, LLC, | |
| Defendants. | |

**ORDER FOR PRELIMINARY INJUNCTION AND OTHER ANCILLARY RELIEF AGAINST DEFENDANT BLUE GURU TRADING, LLC**

On January 12, 2018 Plaintiff Commodity Futures Trading Commission ("CFTC" or "Commission") filed a Complaint against the Defendants, Richard D. Carter ("Carter") Mark R. Slobodnik ("Slobodnik") and Blue Guru Trading, LLC ("Blue Guru"), seeking injunctive and other equitable relief for violations of the Commodity Exchange Act, as amended ("Act"), 7 U.S.C. §§ 1-26 (2012). On January 12, 2018, the Court entered a Statutory Restraining Order against the defendants and scheduled a hearing on the CFTC's motion for Preliminary Injunction. Service of the Statutory Restraining Order was properly made on the Defendants on January 12, 2018.

## I. FINDINGS BY THE COURT

This matter comes before this Court on the Motion for Preliminary Injunction filed by the CFTC. The Court having considered the pleadings, declarations, exhibits, and the incorporated memorandum of law filed in support of the CFTC's Motion, and the Court being filly advised in the premises,

1

**THE COURT FINDS:**

1.　　This Court has jurisdiction over this action under 28 U.S.C. § 1331 (2012) (federal question jurisdiction) and 28 U.S.C. § 1345 (2012) (district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress).  This Court has jurisdiction over the subject matter of this action and Defendant Blue Guru hereto pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1(a) (2012), which authorizes the CFTC to seek injunctive relief against any person whenever it shall appear that such person has engaged, is engaging or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation or order thereunder.

2.　　Venue properly lies with this Court pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, in that Defendant Blue Guru is found in, inhabits, or transacts business in this district, and the actions and practices in violation of the Act have occurred, are occurring, or are about to occur within this district, among other places.

3.　　Plaintiff Commodity Futures Trading Commission is an independent federal regulatory agency that is charged by Congress with the responsibility for enforcing the provisions of the Act, 7 U.S.C. §§ 1-26 (2012), and the Regulations promulgated thereunder, 17 C.F.R. Pt. 1-190 (2017).

4.　　Defendant Blue Guru Trading, LLC is a limited liability company formed pursuant to the laws of Delaware on April 2, 2014.  Blue Guru's principal place of business is located in Lincolnshire, Illinois.  Blue Guru has never been registered with the Commission in any capacity.

　　**A.**　　**Fraudulent Solicitation of Pool Participants**

5.　　Blue Guru was established in April 2014 and began soliciting and accepting funds for participation interests in the Blue Guru commodity pool (described in terms of "investments

in Blue Guru") shortly thereafter. Blue Guru's "Confidential Private Placement Memorandum" (the "Blue Guru PPM"), provided to participants, describes the investment and sets out the investment terms. The Blue Guru PPM describes Blue Guru as a limited liability company "in the business of trading futures contracts on the Dow Jones E-mini Contract (known as YM) and The S&P 500 E-mini (known as the ES)." The Blue Guru PPM also states that it "intend[s] to use the proceeds of the Offering for buying and selling futures contracts on the Chicago Mercantile Exchange." As described in the Blue Guru PPM, participation interests in the Blue Guru Commodity pool (the "Pool") are structured in the form of "Notes," which "are due twelve months from the date of issuance" with "the principal amount will be paid at maturity, unless earlier redeemed, and interest will be accrued and paid annually, on Jan 20th, commencing the first year after issuance, until maturity at the rate of 8.0% (eight percent) per annum, with a payout of 50% (fifty-percent) of the gross net profit from trading profits."

6. The "Risk Factors" section of the Blue Guru PPM states, "We currently collaborate with various trading firms and have developed a proprietary model for trading the financial markets." It also states "we are subject to Commodity Trading regulations" and that "we will be substantially dependent upon our officers, specifically, Mr. Mark Slobodnik and Mr. Richard Carter, who have significant experience in our business, to carry out our business plan." The "Business" section of the Blue Guru PPM states that "Trades will be made in an Omnibus account and profits and losses are placed into member accounts on a percentage basis." Exhibit B to the Blue Guru PPM is a "Subscription Agreement Private Placement of Notes" for Blue Guru. The Agreement echoes the statements in the PPM regarding the purpose of the LLC; however, it states that "interest will be accrued and paid *quarterly* after issuance, until maturity at a rate of 8.0% (eight percent) per annum."

7. The Blue Guru PPM does not contain any restrictions on participants' ability to withdraw their principal investment plus interest at any time.

8. Prospective and actual participants understood that their funds would be used for commodity futures trading. Additionally, the PPM states that "their proprietary software is finding areas where the market cannot go higher or lower creating zones of resistance and support. These zones are found with a combination of various factors. We will isolate the trend." Blue Guru's purported trading strategy entailed trading in Dow Jones E-mini and in S&P 500 E-mini futures contracts on the CME and hedging positions with options contracts from time to time.

9. During solicitations of participants, participants were told that the funds they invested would be used to trade commodity futures contracts in a pooled account at a registered FCM located in Chicago ("FCM A"). However, FCM A did not carry any Blue Guru accounts identified as holding pooled interests or any sub-accounts for Blue Guru participants.

10. During the Relevant Time, Blue Guru received at least $750,000 from at least eighteen participants located in this District to invest with and sign a subscription agreement with Blue Guru.

    **B.**    **Failure to Trade and Misappropriation of Participant Funds**

11. Contrary to the terms of the PPM for Blue Guru, not all of the funds that participants invested in Blue Guru were used to trade. Instead, a significant portion of participants' funds were misappropriated. While Blue Guru maintains four proprietary accounts at FCM A, FCM A has never had a pooled account in the name of Blue Guru or any sub-accounts for Blue Guru's participants.

12.     The combined total deposited into the Blue Guru proprietary accounts at FCM A during the life of the accounts was $1,128,485, at least $750,000 of which was participants' funds, total withdrawn was $585,065.20, total lost trading was $500,669.92, and the average monthly loss for the four proprietary accounts was $11,378.86.

### C.     Issuance of False Statements

13.     During the Relevant Time, Blue Guru issued at least 13 false statements to at least three participants in the Pool that falsely reported the value of participants' interests, and falsely reported that the Pool was increasing in value every quarter when in fact it was not.

14.     For example, a participant in Kenilworth, Illinois who invested a total of $450,000 with Blue Guru in the name of two of his business on July 13, 2016 and September 22, 2016, respectively, received a spreadsheet from Blue Guru reflecting the Pool's track record of monthly returns ranging from a low of 3% to more than 8% with no losses. He also received quarterly account statements for his two investments showing that his investments had earned the following monthly returns with no losses:

| Month | Gain/Loss Investment #1 | Total | Gain/Loss Investment #2 (GSP) | Total |
|---|---|---|---|---|
| January 2017 | $12,853 | $286,340 | $10,828 | $230,494 |
| February 2017 | $16,762 | $303,102 | $14,146 | $241,322 |
| March 2017 | $546 | $303,648 | $460 | $255,928 |
| April 2017 | $12,267 | $315,915 | $10,339 | $266,267 |
| May 2017 | $18,993 | $334,908 | $16,008 | $282,275 |
| June 2017 | $16,779 | $351,687 | $14,142 | $296,417 |
| July 2017 | $5,346 | $357,033 | $4,506 | $300,923 |
| August 2017 | $19,922 | $376,955 | $16,791 | $3,17,714 |
| September 2017 | $11,346 | $388,301 | $9,563 | $327,277 |

15.     Participants who reviewed their quarterly account statements were intended to believe, and did believe, that their investments with Blue Guru had not only held their value, but

5

grew at a rate of at least eight percent per year plus 50% of gross net trading profits. These statements were false because, on information and belief, Blue Guru had no trading positions, cash, or other assets sufficient to support the values disclosed in the statements.

16. At the beginning of this year, when one Blue Guru participant called FCM A to ask about the status of his investment after several unsuccessful attempts to withdraw his funds from Blue Guru, he was advised that no account for him or any customer account for Blue Guru exists or had ever existed at FCM A. When he provided account statements to FCM A that he had received from Blue Guru and that appeared to be on FCM A letterhead, he was advised that the statements were not issued by FCM A and appeared to be false.

17. As explained above, all of these statements are false. Blue Guru has no accounts in the name of the Blue Guru pool and no sub-accounts for participants at FCM A, did not trade a significant portion of participants funds, but instead, misappropriated participants' funds.

### D. Participants Are Not Able To Withdraw Their Funds

18. When participants attempted to withdraw their initial capital or reported profits from Blue Guru, they were denied some or all of their funds.

### II. VIOLATIONS OF THE COMMODITY EXCHANGE ACT AND REGULATIONS

19. As alleged in Count One of the Complaint, the Court finds that the Plaintiff has made a showing of a reasonable likelihood of success on the merits that Defendant Blue Guru, by and through its employees and agents, has willfully cheated, defrauded or deceived and/or attempted to cheat, defraud or deceive participants in Blue Guru by, among other things:

    i. misappropriating participants' funds;

    ii. misrepresenting that participant funds would be used to trade commodity futures contracts in a pooled account(s) at FCM A;

      iii. misrepresenting that participants were earning consistent profits on their investments;

      iv. misrepresenting that pool participants were guaranteed to earn profits of at least 8%, annual returns and receive 50% of gross net trading profits, when a significant portion of participants' funds were not used to trade; and

      v. refusing to honor participant requests to withdraw their funds.

20. As alleged in Count Three of the Complaint, the Court finds that the Plaintiff has made a showing of a reasonable likelihood of success on the merits that, during the Relevant Time, Blue Guru, by and through its employees and agents, acted as a commodity pool operator ("CPO"), in that it engaged in a business that is of the nature of an investment trust, syndicate or similar form of enterprise operated for the purpose of trading in commodity interests or commodity futures, and in connection therewith, solicited, accepted and received funds from others for the purpose of trading in commodity interests and commodity futures.

21. As alleged in Count Three of the Complaint the Court finds that the Plaintiff has made a showing of a reasonable likelihood of success on the merits that Blue Guru, by and through its employees and agents, while acting as a CPO, defrauded and deceived participants of Blue Guru by using the mails or any other means of interstate commerce in violation of Section 4$o$(1) of the Act by among other things:

      i. misappropriating participants' funds; and

      ii. making material misrepresentations and omitting material facts to prospective and actual participants, as described in Paragraphs 5-17 above.

22. As alleged in Count Three of the Complaint the Court finds that the Plaintiff has made a showing of a reasonable likelihood of success on the merits that Blue Guru, by and

through its employees and agents, while acting as a CPO, defrauded and deceived participants of Blue Guru by using the mails or any other means of interstate commerce in violation of Section 4*o*(1) of the Act, by among other things, causing false account statements to be issued to participants in Blue Guru that reflected non-existent equity and income.

23. As alleged in Count Four of the Complaint, the Court finds that the Plaintiff has made a showing of a reasonable likelihood of success on the merits that, during the Relevant Time, Blue Guru, by and through its employees and agents, engaged in activities as a CPO without the benefit of registration as a CPO, and in connection therewith used the mails or other means or instrumentalities of interstate commerce, in violation of Section 4m(1) of the Act

24. As alleged in Count Five of the Complaint, the Court finds that the Plaintiff has made a showing of a reasonable likelihood of success on the merits that Blue Guru, by and through its employees and agents, violated Section 4k(2) of the Act in that, acting as a CPO, it allowed two individuals to act as its associated persons ("APs") when it knew or should have known that they were not registered as APs.

### III. ORDER OF PRELIMINARY INJUNCTION AND OTHER EQUITABLE RELIEF

**IT IS THEREFORE ORDERED THAT:**

25. Defendant Blue Guru, and any person insofar as he or she is acting in the capacity of an officer, agent, servant, employee or attorney of Defendant Blue Guru and any person who receives actual notice of this Order by personal service or otherwise insofar as he or she is acting in concert or participation with Defendant Blue Guru, is restrained, enjoined and prohibited, until further order of the Court, from directly or indirectly:

   a. in connection with any order to make, or the making of, any contract of sale of any commodity in interstate commerce or for future delivery that is made, or to be made, on or subject to the rules of a designated contract market, for or on behalf of any other person, (A) cheating or defrauding or

8

          attempting to cheat or defraud such other person; (B) willfully making or causing to be made to such other person any false report or statement, or willfully entering or causing to be entered for such other person any false record; or (C) willfully deceiving or attempting to deceive such other person, in violation of Section 4b(a)(1)(A)-(C) of the Act, 7 U.S.C. § 6b(a)(1)(A)-(C) (2012);

    b.    using the mails or any means or instrumentality of interstate commerce, directly or indirectly, as a commodity pool operator ("CPO") or associated person ("AP") of a CPO to (A) employ any device, scheme, or artifice to defraud any participant; or (B) engage in any transaction, practice, or course of business that operates as a fraud or deceit upon any participant, in violation of Section 4*o*(1) of the Act, 7 U.S.C. § 6*o*(1) (2012);

    c.    failing to register as a CPO in violation of Section 4m(1) of the Act, 7 U.S.C. § 6m(1) (2012); and

    d.    failing to register as an AP or permitting an AP to remain unregistered, in violation of Section 4k(2) of the Act, 7 U.S.C. § 6k(2) (2012).

26.    Defendant Blue Guru, and any person insofar as he or she is acting in the capacity of an officer, agent, servant, employee or attorney of Defendant Blue Guru and any person who receives actual notice of this Order by personal service or otherwise insofar as he or she is acting in concert or participation with Defendant Blue Guru, is further restrained, enjoined and prohibited, until further order of the Court, from directly or indirectly:

    A.    trading on or subject to the rules of any registered entity (as that term is defined in Section 1a of the Act, 7 U.S.C. § 1a (2012));

    B.    entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3(yy), 17 C.F.R. § 1.3(yy) (2017)) for his personal account or for any account in which he has a direct or indirect interest;

    C.    (i) having any commodity interests traded on its behalf; (ii) controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests; or (iii) soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

    D.    applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2017); and

      E.      acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2014)), agent or any other officer or employee of any person (as that term is defined in Section 1a(38) of the Act, 7 U.S.C. § 1a(38) (2012)) registered, exempted from registration or required to be registered with the Commission except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2017).

27.      Until further order of this Court, Defendant Blue Guru and each firm, corporation, or other person or entity with notice that holds any accounts, funds, assets, or other property of Defendant Blue Guru is prohibited from directly or indirectly withdrawing, transferring, removing, dissipating, concealing, assigning, pledging, encumbering, disbursing, converting, selling, or otherwise disposing of, in any manner, any funds, assets, or other property of Defendant Blue Guru, wherever situated, including, but not limited to, all funds, personal property, money or securities held in safes, safety deposit boxes and all funds on deposit in any financial institution, bank or savings and loan account, including funds or property of customers, wherever located, whether held in the name of Defendant Blue Guru or otherwise, and the assets affected by this paragraph shall include both existing assets and income and assets acquired after the effective date of this Order.

28.      Until further order of this Court, Defendant Blue Guru and all persons insofar as they are acting in the capacity of Defendant Blue Guru's agents, servants, successors, employees, assigns, and attorneys, and all persons insofar as they are acting in active concert or participation with Defendant Blue Guru who receive actual notice of such order by personal service or otherwise, are prohibited from destroying, mutilating, concealing, altering, or disposing of, in any manner, any books, records, or other documents of Defendant Blue Guru, including all such records concerning Defendant Blue Guru's solicitation and trading activities, wherever located.

29.      The injunctive provisions of this Order shall be binding on Defendant Blue Guru, upon any person insofar as he or she is acting in the capacity of officer, agent, servant, employee or attorney of Defendant Blue Guru and upon any person who receives actual notice of this

Order by personal service, facsimile or otherwise insofar as he or she is acting in active concert or participation with Defendant Blue Guru.

30. Defendant Blue Guru and all persons insofar as they are acting in the capacity of Defendant Blue Guru's agents, servants, successors, employees, assigns, and attorneys, and all persons insofar as they are acting in active concert or participation with Defendant Blue Guru who receive actual notice of this order by personal service or otherwise, are prohibited from refusing to permit authorized representatives of the CFTC to inspect and copy, when and as reasonably requested, any books, records, or other documents of Defendant Blue Guru, including all such records concerning Defendant Blue Guru's solicitation and trading activities, wherever located, and whether they are in the possession of Defendant Blue Guru or others, either on or off the premises where they may be situated.

31. It is further ordered that copies of this Order may be served by any means, including personal service, United Parcel Service, Federal Express, or other commercial overnight service, email, facsimile, Rule 5 of the Federal Rules of Civil Procedure, or Articles 2 through 10 of the Hague Convention, Service Abroad of Judicial and Extrajudicial Documents, upon any financial institution or other entity or person that may have possession, custody, or control of any documents or assets of Defendants or that may be subject to any provision of the order of preliminary. Joseph Patrick, Ray Lavko and Rick Torres, all employees of the CFTC, are hereby specially appointed to serve process, including this Order and all other papers in this cause.

32. This Order shall remain in effect until further order of the Court and the Court shall retain jurisdiction over this action to ensure compliance with this Order and for all other purposes related to this action.

IT IS SO ORDERED.

DATED: January 26, 2018

Manish S. Shah
United States District Court Judge